UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TYRONE HAYWOOD,

                    Plaintiff,

          v.

TENNESSEE S. PALMER and A. VALLE,

                    Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3/30/2023_____

21 CV 7277 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Tyrone Haywood, proceeding *pro se*, commenced this action on August 30, 2021, against Defendants Correction Officers ("C.O.") Tennessee S. Palmer ("Palmer") and Anthony Valle ("Valle") (collectively "Defendants"), who are current employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), alleging claims pursuant to 42 U.S.C. § 1983 ("Section 1983") for retaliation, conspiracy, assault, and cruel and unusual punishment in violation of the Eighth Amendment to the United State Constitution ("U.S. Constitution"). (Complaint ("Compl."), at § V. (ECF No. 2.) Presently before this Court is Defendants' motion to dismiss Plaintiff's Complaint pursuant to the Federal Rules of Civil Procedure Rule 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim upon which relief can be granted. (ECF No. 30.) For the reasons discussed below, Defendants' motion is GRANTED and Plaintiffs' claims are dismissed without prejudice.

## BACKGROUND

The facts herein are drawn from Plaintiff's Complaint. The Court "accepts all well-pleaded facts in the Complaint and Supplemental Pleading as true for the purpose of ruling on a motion to dismiss." *Jackson v. NYS Dep't of Labor*, 709 F.Supp.2d 218, 222 (S.D.N.Y. 2010).

1

I.       **Alleged Assault of Plaintiff and Rodriguez by Defendants Palmer and Valle**

On January 6, 2021, Plaintiff was incarcerated at Green Haven Correctional Facility and was questioned by Defendant Palmer regarding a pending lawsuit at Plaintiff's regularly scheduled program, "Industry." (Compl., at 7.) Palmer asked Plaintiff why he was "snitching on [Palmer's] buddies." (*Id.*) Plaintiff replied that Palmer should "mind [his] own business" and walked away from Palmer. (*Id.*)

Later that day, Plaintiff walked through the "panel shop" where Palmer was stationed. (*Id.*) Palmer asked Plaintiff where he was going, and Plaintiff replied that the "chair shop civilian" asked Plaintiff to pick up materials. (*Id.*) Palmer then ordered Plaintiff to return to the chair shop. (*Id.*) When Plaintiff turned away from Palmer to return the chair shop, Palmer purportedly said, "what did you say" to Plaintiff and attacked Plaintiff from behind. (*Id.*, at 8.) Plaintiff then tripped over debris and fell to the ground. (*Id.*) Palmer ordered Plaintiff to stay down, placed his knee on Plaintiff's back, and pepper-sprayed Plaintiff. (*Id.*)

Anthony Rodriguez ("Rodriguez"), who was also incarcerated at Green Haven Correctional Facility at this time, witnessed the incident involving Plaintiff and Defendant Palmer while working in the vicinity. (*Id.*) Rodriguez allegedly told Defendant Palmer to "stop pepper-spraying [Plaintiff], he is down." (*Id.*) Plaintiff states that Palmer pepper-sprayed Rodriguez in response to Rodriguez's interference, rendering Rodriguez unresponsive, and then resumed pepper-spraying Plaintiff (*Id.*) Subsequently, Valle tackled Plaintiff from behind, forcing him head-first into a brick wall. (*Id.*)

Following this incident, Plaintiff and Rodriguez were transported to outside hospitals for their injuries. (*Id.*, at 9.) While in the hospital, Plaintiff and Rodriguez were served with a misbehavior report written by Palmer that stated Plaintiff and Rodriguez were fighting. (*Id.*)

Plaintiff was then transferred following the incident to Great Meadows Correctional Facility due to a separation order filed against Plaintiff and Rodriguez. (*Id.*)

Plaintiff was found guilty during an internal proceeding of fighting with and assaulting, Rodriguez, despite Rodriguez's testimony during Plaintiff's "Tier III hearing" that Rodriguez did not see Plaintiff fighting and that Palmer committed an unprovoked assault on Rodriguez and Plaintiff. (*Id.*) Plaintiff appealed this finding of guilt, and "filed an Article 78," but he has not received a response to either his appeal or filing of Article 78. (*Id.*, at § IV(E).)

## II.        Plaintiff's Grievance

Plaintiff alleges that, although he filed a grievance for the purported assault, he did not receive a response, which is "[the prison administration's] usual practice. (*Id.*, at § IV(E).) He further alleges that the "grievance process is broken" (*Id.*, at § IV(F).) Additionally, Plaintiff claims that "this matter was appealed," but it is unclear whether this references his attempt to appeal the absence of a response to his grievance; it is possible, even likely, that Plaintiff is simply referencing his appeal to the guilty verdict he received at his Tier III hearing, given that he clearly states in his Complaint that he appealed this verdict, but fails to clearly state in his Complaint or opposition that he appealed his grievance. (*See id.*, at § IV(F).)

## LEGAL STANDARDS

## I.        Motion To Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. While the Court must take

all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id*. at 662, 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

A court's review on a Rule 12(b)(6) motion is typically limited to the facts presented in the pleadings. A court, however, may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (*quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002)). Generally, the harm to a plaintiff when a court considers material extraneous to a complaint on a Rule 12(b)(6) motion "is the lack of notice that the material may be considered." *Chambers*, 282 F.3d at 153. Where the plaintiff has actual notice of all the information in the movant's papers, in particular the existence of a controlling contract, and relies upon that document in framing the complaint, the lack of notice no longer exists. *See id.* (ruling that lower court did not err in considering contracts extraneous to the complaint where plaintiff possessed these contracts and relied upon their terms and effects in framing the complaint).

**II.    42 U.S.C. 1983**

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

4

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); see Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under § 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *Quinn v. Nassau Cty. Police Dep't*, 53 F.Supp.2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.").

### III.    Exhaustion Under the Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") bars an inmate from bringing a Section 1983 action related to prison conditions unless such "administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Williams v. Priatno*, 829 F.3d 118, 121–22 (2d Cir. 2016). Accordingly, "the PLRA does not require the exhaustion of all administrative remedies, but only those that are 'available' to the inmate." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015). "To be 'available' under the PLRA, a remedy must afford 'the possibility of some relief for the action complained of.'" *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

An inmate may exhaust a claim by adhering to the DOCCS grievance procedure. Grievances at DOCCS are governed by the Inmate Grievance Program ("IGP"), which is based on a three-tiered system. *Williams*, 829 F.3d at 119–20. To adjudicate an inmate complaint: "(1) the prisoner files a grievance with the Inmate Grievance Resolution Committee . . . (2) the prisoner

5

may appeal an adverse decision by the IGRC to the superintendent of the facility, and (3) the prisoner then may appeal an adverse decision by the superintendent to the Central Officer Review Committee ('CORC')." *Barker v. Smith*, No. 16-CV-76 (NSR), 2017 WL 3701495, at *3 (S.D.N.Y. Aug. 25, 2017); *see also N.Y. Comp. Codes. R. & Regs.*, tit. 7, § 701.7. "[T]he final step in the grievance procedure always remains the appeal to CORC. Thus, only after CORC has reviewed the appeal and rendered a decision are New York's grievance procedures exhausted." *Gardner v. Daddezio*, No. 7-CV-7201(SAS), 2008 WL 4826025, at *2 (S.D.N.Y. Nov. 5, 2008) (footnote omitted).

Exhaustion is an affirmative defense, not a pleading requirement; thus, inmate plaintiffs need not "specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, Defendants must demonstrate lack of exhaustion. *Colon v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, No. 15-CV-7432(NSR), 2017 WL 4157372, at *5 (S.D.N.Y. Sept. 15, 2017) (citing *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009)). Dismissal on a 12(b)(6) motion for failure to exhaust is permissible where "it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016); *see Lee v. O'Harer*, No. 13- CV-1022, 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents."); *Parris v. N.Y.S. Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 361 (S.D.N.Y. 2013) (noting that denial of motion is appropriate where a complaint is ambiguous as to exhaustion); *Johnson v. Westchester Cty. Dep't of Corr. Med. Dep't*, No. 10-CV-6309, 2011 WL 2946168, at *2 (S.D.N.Y. July 19, 2011).

Further, on such a motion, where a court is typically confined to the four corners of the complaint, the documents attached thereto, and information of which it is entitled to take judicial

notice, *see, e.g., Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013), a court is only

permitted to consider outside documents related to exhaustion and submitted by defendants under

limited circumstances. *See Smith v. Miller*, No. 15-CV-9561(NSR), 2017 WL 4838322, at *5

(S.D.N.Y. Oct. 23, 2017) (noting courts can take judicial notice of administrative records in

Section 1983 cases in limited circumstances). These include instances where "the complaint a)

was the standard *pro se* form complaint that has a check-box regarding exhaustion, b) contained

allegations clearly stating that the inmate had exhausted his administrative remedies, or c) clearly

pointed to the fact that the inmate had, in fact, not exhausted." *Colon v. N.Y.S. Dep't of Corr. &*

*Cmty. Supervision*, No. 15-CV-7432(NSR), 2017 WL 4157372, at *5 (S.D.N.Y. Sept. 15, 2017).

Here, given that the Complaint is a standard *pro se* form complaint that has the equivalent of

multiple checkboxes regarding exhaustion, the Court may consider outside documents that are

related to exhaustion and which Defendants submitted. (*See generally*, Compl. at § IV.)

## DISCUSSION

### I.      Plaintiff Has Failed to Exhaust His Administrative Remedies

As discussed in detail above, to exhaust all remedies, Plaintiff must have "[used] all steps

that the agency holds out and [did] so properly (so that the agency addresses the issue on the

merits.)'" *Smith v Miller*, No. 15-CV-9561 (NSR), 2017 WL 4838322, at *4 (S.D.N.Y. Oct. 23,

2017) (quoting *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009)). Plaintiff claims that he

filed a grievance but never received a response to it and further alleges that "the grievance process

is broken" and that "it is Green Haven Correctional Facility's "usual practice" not to respond to

grievances. (Compl., at § IV(E-F).) Additionally, Plaintiff asserts that he was not able to place a

grievance in the facility mailbox personally because he was placed in keeplock until his

disciplinary hearing on January 22, 2021, and that he therefore "provide[d] [his] grievance to

inmates to place in the box for [him]." (ECF No. 32, at 1.) Regarding Plaintiff's use of the grievance appeals process, Plaintiff makes the sole vague and conclusory claim that "this matter was appealed." (*See id.*, at § IV(F).)

Defendants, however, allege no record of any grievance being filed. (Declaration of Lauren Stanaway ("Stanaway Decl.") ¶ 5.); *see also* Declaration of Matthew Degregory ("Degregory Decl.," ¶ 1.) Additionally, although Plaintiff alleges that he appealed "the matter," this claim (even liberally construed) does not constitute an allegation that he appealed to both the supervisor of the facility and the CORC, as is required to exhaust all administrative remedies, given that: (1) as noted above, it is unclear whether this appeal refers to the grievance for which he failed to receive a response or to his disciplinary hearing; (2) Plaintiff does not identify the person or entity to whom he appealed; (3) Plaintiff does not allege that he made multiple appeals; (3) Plaintiff does not mention an appeal in his opposition papers; (4) Defendants have no record that any appeal to Plaintiff's grievance was filed; and (5) Plaintiff has not alleged that he received an adverse decision (or indeed any decision) on his purported appeal. *See Hicks v. Adams*, 692 F. App'x 647, 648 (2d Cir. 2017) (noting that the *pro se* plaintiff failed to exhaust or provide an excuse to this failure because, although he asserted that prison staff did not transmit the appeals, he attempted to submit, he failed to "state when he submitted the appeals, to whom, and what if any steps he took after the documents were not filed"); *see also Moore v. Cajigas*, No. 12 CIV. 4120 WHP, 2013 WL 4734829, at *4 (S.D.N.Y. Aug. 20, 2013) (dismissing the *pro se* plaintiff's claims against one defendant for failure to exhaust where the *pro se* plaintiff's claims remained on appeal). Thus, as Plaintiff did not plausibly allege that he appealed his grievance, Plaintiff failed to exhaust all administrative remedies despite his allegation that he filed a grievance.

## II.    Plaintiff has Not Shown an Excuse to His Failure to Exhaust

Yet, the Court must next consider whether there is any basis for excusing Plaintiff's failure to exhaust his administrative remedies.  "The Supreme Court [has] forcefully disapproved of judge-made exceptions to the PLRA's exhaustion requirement, stressing the mandatory language of the statute." *Mena v. City of New York*, No. 13-cv-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y., July 19, 2016) (citing *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016)). Before the Supreme Court's decision in *Blake*, the Second Circuit recognized a special circumstances exception to exhaustion. *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). However, in *Blake*, the Supreme Court rejected this exception, holding that "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." 136 S.Ct. at 1857. The only exception to the exhaustion requirement, then, is that a prisoner does not need to exhaust administrative remedies that are unavailable. *Blake*, 136 S. Ct. at 1852.5

The Supreme Court has articulated three circumstances in which grievance procedures are considered unavailable. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." 136 S. Ct. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* Third, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation [,]" a prisoner's failure to exhaust may be excused. *Id.* at 1860.

As noted above, Plaintiff indicates that he failed to exhaust the administrative remedies available to him partly because: (1) he was unable to file his grievance personally because his

movements within the prison facility were restricted; and (2) prison officials failed to respond to

his grievance. (Compl., at § IV(E-F).) However, these reasons do not excuse Plaintiff's failure to

exhaust where, as here (and as the Court concluded above), he has failed to plausibly allege that

he appealed his grievance to the supervisor of the facility and the CORC and has not alleged that

he was prevented from appealing it.[1] *See Heyliger v. Gebler*, 624 F. App'x 780, 782 (2d Cir. 2015)

(concurring with the district court that a New York plaintiff failed to show an "excuse" to his

failure to exhaust despite his allegation that correctional officers threw his grievance in the garbage

where he did not sufficiently allege that he appealed this grievance, given that an inmate may

appeal a grievance where he did not receive a response); *see also Khudan v. Lee*, No. 12-CV-8147

(RJS), 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016) (noting, "although Plaintiff asserts that

he never received a response to his grievance, he was still required to appeal to the superintendent,"

and that as a matter of law here therefore failed to sufficiently allege an "excuse"); *Taylor v. N.Y.C.*

*Dep't of Corr.*, 849 Fed. App'x 5, 9 (2d Cir. 2021) (recognizing that prison officials' failures to

respond to grievances does not render the grievance process "unavailable").

Moreover, although Plaintiff alleges that "the grievance process is broken" and that it is

Green Haven Correctional Facility's "usual practice" not to respond to grievances, these claims

are too vague and conclusory to excuse Plaintiff's failure to exhaust. *See Hicks v. Adams*, 692 F.

---

[1] Although Plaintiff claims that he notified his family and OSI of his grievance, such outside notification does not save his claim that he exhausted all administrative remedies. *Salmon v. Bellinger*, No. 914CV0827LEKDJS, 2016 WL 4411338, at *4 (N.D.N.Y. July 5, 2016), *report and recommendation adopted*, No. 914CV0827LEKDJS, 2016 WL 4275733 (N.D.N.Y. Aug. 12, 2016) (recognizing that, "[l]etters sent outside of the grievance process, such as Plaintiff's letters to Commissioner Annucci and the Inspector General, are insufficient to satisfy the exhaustion requirement."), *adopted*, 2016 WL 4275733 (N.D.N.Y. Aug. 12, 2016); *see also Timmons v. Schriro*, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("[T]he law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA."); *Muhammad v. Pico*, 2003 WL 21792158, at *8 (S.D.N.Y. Aug. 5, 2003) ("District court decisions in this circuit have repeatedly held that complaint letters to the DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements."); *Grey v. Sparhawk*, 2000 WL 815916, at *2 (S.D.N.Y. June 23, 2000) ("Any complaint ... made directly to the Inspector General's office does not serve to excuse plaintiff from adhering to the available administrative procedures.").

App'x 647, 648 (2d Cir. 2017); *see also Amidax Trading Group v. SW.IF.T. SCRL*, 671 F.3d 140, 146 (2d Cir. 2011) ("It is well established that we need not credit a complaint's conclusory statements without reference to its factual context."). Thus, Defendant's motion to dismiss is granted, as Defendants have met their burden to demonstrate that Plaintiff failed to exhaust his available administrative remedies.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. Plaintiff's claims are dismissed without prejudice, as Defendants have met their burden to demonstrate that Plaintiff failed to exhaust the administrative remedies available to him.

Plaintiff is granted leave to file an Amended Complaint on or before April 28, 2023. Should Plaintiff not file an Amended Complaint by this date, Plaintiff's claims will be dismissed with prejudice. In the event Plaintiff files an Amended Complaint on or before April 28, 2023, Defendants are directed to answer, or otherwise seek leave to move to, the Amended Complaint within twenty-one (21) days following Plaintiff's filing of the Amended Complaint.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 30, to mail a copy of this Opinion to *pro se* Plaintiff at the address listed on ECF, and to show service on the docket.

SO ORDERED:

Dated:    March 30, 2023
          White Plains, New York

NELSON S. ROMÁN
United States District Judge

11